Argued and submitted June 2, 1982, reversed and remanded March 23, 1983

J. R. GOLF SERVICES, INC. et al,
*Petitioners,*

*v.*

LINN COUNTY et al,
*Respondents.*

(81-112; CA A23989)

661 P2d 91

Robert L. Liberty, Portland, argued the cause and filed the brief for petitioners.

Robert T. Scott, Albany, argued the cause for respondents Oregon State University and Oregon State University Foundation. With him on the brief was Scott & Norman, P. C., Albany.

Allison Smith, Deputy District Attorney, Albany, waived appearance for respondent Linn County.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

Petitioners seek judicial review of a final order of the Land Use Board of Appeals (LUBA) that affirmed Linn County's issuance of a conditional use permit and a greenway development permit for the construction of an 18-hole public golf course on land zoned for exclusive farm use (EFU) and situated in the Willamette River Greenway. ORS 390.310, *et seq.* Petitioners contend that: 1) a golf course is not permitted in an EFU zone, because Linn County Zoning Ordinance Section 21.450 prohibits a "use" from taking farm land; (2) Zoning Ordinance Section 21.870 requires that land in the greenway be preserved for farm use; and (3) the failure to secure an "extraordinary exception" for 5.23 acres designated as "rural land" in the greenway pursuant to OAR 660-20-017 is fatal. We agree with the second assignment of error and therefore reverse and remand.

In 1951, Oregon State University (OSU) purchased 241 acres of land on the east bank of the Willamette River and across the river from the city of Corvallis, intending to devote the land to agricultural research, physical education, and golf. Seventy-one acres have been and are now used for agricultural research. The remaining 170 acres are to include a golf course and the present OSU crew facilities. Because private funding of the golf course lagged, 110 acres of the 165 acres projected for the course have been farmed by various lessees. In 1977, a donor gave the Oregon State University Foundation (Foundation) real estate worth $750,000 with the restriction that the proceeds from its sale be used for the construction of a "first rate, championship golf course."

The proposed golf course will require 165 acres within an EFU zone and the Willamette Greenway. The land has a greenway classification as publicly-owned "urban land," except for 5.23 acres designated as "rural land" in the northeast corner. In 1981, OSU and the Foundation applied to Linn County for a conditional use permit, a prerequisite for a golf course in an EFU zone, and a greenway development permit. Linn County granted the permits, and LUBA affirmed. The scope of our review is

provided by Or Laws 1979, ch 772, § 6A(7) and (8) (as amended).

■    A golf course is permitted as a conditional use in an EFU zone by the ordinance. Section 6.040(14) and ORS 215.213(2)(e).[1] Petitioners contend that the ordinance, Section 21.450, prohibits outright the issuance of a conditional use permit for a golf course in an EFU zone. That section provides:

"In a Forest Conservation and Management (FCM), Exclusive Farm Use (EFU), or Farm-Forest (F/F) District, the location of a non-farm or non-forest related residence or use may be permitted through Hearings Board or Planning Commission review and approval if the following criteria for approval can be met:

"1.   The *use* will not remove land suitable for agricultural or forest resource crop production.

"2.   The *use* will not seriously interfere with usual and normal farm or forest practrices which may occur on adjacent agricultrual lands, such as hazardous pesticide or herbicide applications, noise, dust, smoke or offensive odors.

"3.   The *use* will not materially alter the stability of the overall land use pattern in the area.

"4.   Considering the soil capabilities identified by the Soil Conservation Service, Department of Revenue, and the Department of Forestry, *the use* will be located on land not generally suitable for the production of farm crops,

---

[1] Zoning Ordinance Section 6.040 provides:

"In an Exclusive Farm Use (EFU) District, the following buildings and uses and their accessory buildings and uses are permitted subject to Planning Commission Conditional Use Review pursuant to provisions of this Ordinance, and subject to the general provisions and exceptions set forth below:

"* * * * *

"14. Private parks, playgrounds, hunting and fishing preserves, camground and golf courses."

ORS 215.213(2) provides in part:

"2. The following non-farm uses may be established, subject to the approval of the governing body or its designate in any area zoned for exclusive farm use:

"* * * * *

"(e) Golf courses."

forest crops, or livestock as conducted in that particular area, considering the soils, slope, vegetation, size, shape or other physical characteristics of the parcel."

"5. The proposed site has the appropriate physical characteristics such as adequate drainage, proper sanitation and water facilities, and the aesthetic qualities for non-resource *use* development." (Emphasis supplied.)[2]

Petitioners reason that a golf course is a "use" as that term is used in Section 21.450 and, because a golf course would remove land from agricultural production, it is prohibited. LUBA concluded that Section 21.450 does not apply. We agree with LUBA.

Section 6.040(14) expressly declares that a golf course is a conditional use in an EFU zone. That section would be a nullity if, as petitioners claim, Section 21.450 prohibits *any* non-farm use from taking agricultural land. It is unlikely that the drafters of Section 6.040 intended that the provision for a golf course as a conditional use in an EFU zone be an empty gesture.

Petitioners next argue that the golf course is not permitted on land situated within the Willamette River Greenway, because the ordinance, Section 21.870(1), requires the preservation of agricultural land within the greenway for "farm use." Section 21.870(1) provides:

"In reviewing an application for a Greenway Development Permit, compliance with the following criteria shall be required.

"1. Agricultural lands shall be preserved and maintained for farm use.

"* * * * *."

---

[2] The county planning commission found that the criteria of Section 21.450 applied and denied the application for a conditional use permit. The county commission made extensive findings of fact which included the application of those criteria, and ordered that the permit be granted. Before LUBA, petitioners argued that the county's finding that the golf course under Section 21.450 would not remove land suitable for agricultrual production was not supported by substantial evidence. LUBA adopted respondents' reasoning that Section 21.450 was not applicable. On appeal, petitioners state the central issue to be whether Section 21.450 applies to all non-farm or non-forest related uses in the county resource zones, *i.e.*, to forest conservation and management (FM), to exclusive farm use (EFU), to farm-forest (F/F), or simply to non-farm or non-forest residences.

Other criteria for a greenway development permit are stated in more flexible, less mandatory language. *See, e.g.,* subsections 21.870(4), (5), (6), (13), (14), (16) and (17).[3]

The County resolved the difficulty with section 21.870(1) by finding that the golf course is a "farm use." Respondents presented testimony from officials of the grass seed industry that seed grown in the Willamette Valley would be planted on the golf course. Grass seed producers could show prospective customers their product under actual use conditions. Professors from OSU testified

---

[3] Ordinance Section 21.870 provides in part:

"In reviewing an application for a Greenway Development Permit, compliance with the following criteria shall be required.

"1. Agricultural lands shall be preserved and maintained for farm use.

"* * * * *

"4. The natural vegetative fringe along the river shall be maintained to the maximum extent practicable in order to assure scenic quality, protection of fish and wildlife habitat, protection from erosion, and screening of uses from the river.

"5. The partial harvest of timber shall be permitted beyond the vegetative fringes in areas not covered by a scenic easement when the harvest is consistent with an approved plan under the Forest Practices Act, or if not covered by the Forest Practices Act, then with an approved plan under the Greenway compatibility review provisions. Such plan shall insure that the natural scenic qualities of the Greenway will be maintained to the greatest extent practicable or restored within a brief period of time.

"6. Areas of ecological, scientific, historical, or archeological significance shall be considered for protection, preservation, restoration, or enhancement.

"* * * * *

"13. Maintenance of public safety and protection of public and private property, especially from vandalism and trespass, shall be provided to the maximum extent practicable.

"14. Public access to and along the river shall be considered in conjunction with subdivision, commercial and industrial development and public lands acquisition where appropriate. This access should be located and designed to minimize trespass and other adverse affects on adjoining property.

"* * * * *

"16. Development, change or intensification of use shall be directed away from the river to the greatest possible extent.

"17. Development, change or intensification of use shall provide the maximum possible landscaped area, aesthetic enhancement, open space, or vegetation between the activity and the river.

"* * * * *"

that landscape students would benefit from activities involving or associated with turf, design, pesticides and herbicides. LUBA paraphrased the findings of the County Commission:

"The findings indicate that the property will be used for agricultural purposes such as experimentation in grass seed production and herbicide and pesticide experimentation as well as field condition testing of golf course grasses.

On the basis of those findings, LUBA agreed that the golf course was a "farm use" within the meaning of Section 21.870.

The county's finding and LUBA's approval of the finding that the golf course is a permissible farm use in the greenway creates a patent inconsistency. The county determined, when it granted the conditional use permit for the golf course in the EFU zone, that the golf course was a *non-farm* use. Section 6.040(14). Then, in support of its decision to issue the greenway development permit, the county found that the golf course and the agricultural uses associated with it constituted a farm use.[4]

Petitioners have framed the issue as being whether Section 21.870(1) prohibits the golf course in the greenway. Section 21.870(1) requires that "agricultural lands be preserved and maintained for farm use." The county has defined "farm use":

"Farm Use: Shall mean the current employment of land including that portion of such land under buildings supporting accepted farming practices for the purpose of obtaining a profit in money by:

---

[4] The inconsistency is exacerbated when Section 21.830 is considered. Zoning Ordinance Section 21.830(6) provides:

"All activities, uses of land and site development requirements set forth in underlying specific zone districts within the Greenway Management Overlay District shall be permitted subject to obtaining a greenway development permit for all proposed development, change, or intensification of use of land or water *except for the following which need not have a Greenway permit.*

"* * * * *

"6. *Farm Uses.*" (Emphasis supplied.)

If, as the county found, a golf course is a farm use in the greenway, a development permit was not required; nor would a conditional use permit be required in the EFU zone. Section 6.020.

- raising, harvesting and selling of crops.
- feeding, breeding, management and sale of, or the produce of, livestock, poultry, furbearing animals or honey bees.
- for dairying and the sale of dairy products.
- aquaculture
- any agricultural or horticultural use
- animal husbandry
- or any combination thereof.

"Farm use shall include the preparation and storage of the products raised on such land for man's use and animal use and for the disposal by marketing or otherwise. Farm use shall not include the use of land subject to the provisions of ORS ch 321 (timber taxation) or to the construction and use of dwellings customarily provided in conjunction with farm use." Ordinance Article 32: Definitions of Terms, p 148.

Any characterization of the golf course as a farm use or other use must be consistent with the foregoing definition.

■    We conclude that the proposed golf course is a recreational use and not a farm use within the meaning of the county's zoning ordinance. Although the golf course will have agricultural benefits, they are incidental. The motivating force for the project was the creation of a "first rate, championship golf course." The primary land use will not be

"the current employment of land * * * for the purpose of obtaining a profit in money by: * * * [an] agricultural * * * use." Ordinance Article 32: Definitions of Terms, p 148.

The new recreational use may be a conditional use in an EFU zone, but it does not come within the county's definition of farm use as that term is used in Section 21.870 which governs development within the greenway.

■    Respondents argue that, if the golf course is not a farm use, it is sufficient that sometime in the future it could be converted back to farm use, the reasoning being that the golf course still would be "preserved" for farm use. Section 21.870(1). However likely or unlikely it is that any 18 hole golf course would be plowed under and converted back to farm use, the laws protecting farm lands do not rest on the hope of reclamation or conversion. The definition of farm use requires the "current employment of the land" for

agricultural purposes, and the greenway ordinance requires that agricultural land be "preserved and maintained" for farm use. Section 21.870(1). The ordinance sections require present use. Speculative potential of future reclamation is insufficient.

We hold that, as a matter of law, the golf course is not a farm use. Our conclusion is dictated by Linn County's greenway restrictions and its definition of "farm use." LUBA erred in affirming the county's decision to issue a greenway development permit.

■ The third assignment of error requires brief discussion. Petitioners argue that, because the tract includes 5.23 acres of land designated as "rural land" for greenway purposes, and because an "extraordinary exception" is required for any "intensification," "change of use" or "development" in rural areas, OAR 660-20-017,[5] the golf course project cannot go forward without an extraordinary exception.

The same administrative rules provide an exemption. A golf course is not considered an "intensification,"

---

[5] OAR 660-10-017 provides, in part:

"* * * [U]ntil the LCDC has determined by order that the Greenway goal has been implemented by the responsible cities, counties, or other governmental agencies, no intensification, change of use, or development shall be permitted by any city, county, special district, state, or federal agency, within the temporary and preliminary boundaries of the Willamette River Greenway in rural areas or within 150 feet of the ordinary low-water line in urban areas, except as provided below:

"(1) Rural Areas: No intensification, change of use, or development shall be permitted in rural areas within 150 feet of the ordinary low-water line nor for commercial, manufacturing, industrial, or subdivision purposes within the Greenway boundaries except in such cases as may be authorized by a county under the rural area Greenway Extraordinary Exception procedures set forth in rule 660-20-030 * * *.

"* * * * *

"(3) Intensification, Change of Use, or Development Exception. Intensification, change of use, or development in urban and rural areas do not include:

"* * * * *

"(d) Activities to protect, conserve, enhance, and maintain public recreational, scenic, historical, and natural uses on public lands;

"* * * * *"

"change of use," or "development"; activities that "enhance * * * public recreational * * * uses on public lands" are exempt from the extraordinary exception requirement. OAR 660-20-017(3)(d). There is no basis to construe the exemption as addressing only pre-existing public uses, as petitioners argue. So to construe the exemption would, for example, require state or local governments to go through the rigors (and possible defeat) of an extraordinary exception to buy and develop a corner of a farm for river access, a swimming beach or a picnic site. The extraordinary exception standards were not drafted for such situations. *See* OAR 660-20-030.[6] LUBA did not err in determining

---

[6] OAR·660-20-030 provides:

"Rural Area Greenway Extraordinary Exception

"(1) The Rural Area Greenway Extraordinary Exception is to be used sparingly for unusual cases only and within the limits prescribed in this order so as not to adversely affect the Greenway.

"(2) The county governing body may authorize any Greenway Extraordinary Exception to rule 660-20-017 of this order in rural areas and issue a permit when, using the same procedures provided in Section 660-20-025(3), the county governing body finds from record:

"(a) That there is an extraordinary, unnecessary and unreasonable hardship caused by strict enforcement of this order which can be relieved only by authorizing an Exception to this order;

"(b) That there are extraordinary circumstances and conditions applying to the land, building, or use which do not apply generally to other such lands, buildings, or uses in the Willamette River Greenway;

"(c) That the granting of the Exception will not be materially detrimental to the Willamette River Greenway in the area affected by the proposed Exception;

"(d) That the granting of the Exception will be in general harmony with the intent and purpose of this order and will be consistent with the adopted Comprehensive Plan;

"(e) That a copy of any application has been sent and processed in the same manner as is provided in Section 660-20-025(5); and

"(f) That the county makes the same findings as those required in paragraphs 660-20-025(b)(A), (B), and (C) of this rule.

"(3) In authorizing a Greenway Extraordinary Exception, the governing body may impose such conditions as it determines to be necessary to insure that the purposes and intent of the Willamette River Greenway are realized.

"(4) The governing body authorizing an Extraordinary Exception, shall file a copy with the recording office in which the lands, subject to the exception are located for inclusion in the Willamette River Greenway Plan and Program."

the greenway extraordinary exception requirement inapplicable.[7]

Reversed and remanded.

---

[7] Our analysis and holding necessarily disapprove of LUBA's novel alternative holding that the golf course is not a "change of use" from the farming that has been carried on at the site. 5 LUBA 94-95. *See* 1 Committee on Continuing Legal Education, Oregon State Bar, *Land Use* § 6.3, p 6-5 (1982).